USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/16/2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

SAUL MOLINA,

                         *Defendant.*
------------------------------------------------------------X

No. 11 Cr. 528 (JFK)

MEMORANDUM OPINION
AND ORDER

John F. Keenan, United States District Judge:

On May 31, 2012, the Hon. Norbert J. Garney, United States Magistrate Judge for the Western District of Texas, El Paso Division, ordered defendant Saul Molina ("Molina" or "Defendant") detained pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§3062, 3141–3150 (2011). Defendant seeks review of the detention order pursuant to 18 U.S.C. § 3145(b). On August 14, 2012, the Court heard oral argument from the parties on Defendant's application. The Court has now completed its review of Defendant's submission dated August 6, 2012, the exhibits attached thereto, and the submissions from Pretrial Services dated May 29 and August 14, 2012.

For the reasons stated below, the Court orders Defendant detained pending trial.

## I. BACKGROUND

Defendant is charged with conspiracy to distribute and to possess with the intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine and one thousand kilograms and more of mixtures and substances containing a detectable amount of marijuana, in violation of 21

U.S.C. §§ 841(a)(1), (b)(1)(A). (Superseding Indictment ¶¶ 2–3, Mar. 13, 2012, ECF No. 3.) The original Indictment was filed in June 2011, and the Superseding Indictment was filed in March 2012.

Molina is a 43 year-old United States citizen who resides in El Paso, Texas. He has lived there his entire life, except for a two-year period of military service, after which Molina was honorably discharged. (Df.'s Mot. to Revoke Order of Detention 9, Aug. 6, 2012, ECF No. 10.) Defendant is currently in the custody of the United States Marshals pursuant to an order of detention (the "Initial Detention Order") entered by the United States District Court for the Western District of New York (Garney, *Mag. J.*) on May 31, 2012. Prior to entry of the Initial Detention Order, Magistrate Judge Garney held an evidentiary hearing at which testimony was received from Matthew Emrich, a Special Agent with the United States Drug Enforcement Administration in El Paso. (Df.'s Mot. to Revoke Order of Detention Ex. A, Detention Hr'g Tr. 3:18–23, May 31, 2012, ECF No. 12.)

At the May 31 hearing, Special Agent Emrich testified that cooperating witnesses had identified Molina by his presence in a photograph array and by his voice on multiple recorded phone calls conducted in the Southern District of New York in 2006. (*Id.* at 5:8–20, 39:22.) These recorded phone calls included both Title 3 intercepts and consensual recordings. (*Id.* at 6:11–16.) Emrich also testified that two of Molina's alleged co-conspirators were in possession of approximately seventy kilograms of cocaine when they were arrested. (*Id.* at 7:13–24.) After their arrest, these co-conspirators were detained at the Rikers Island detention complex, which

is operated by the Department of Correction of the City of New York. (*Id.* at 8:3–7.) The names of these co-conspirators were found on a piece of paper, written along with the word "Rikers," during a search of Molina's trash at his residence in El Paso. (*Id.* 8:8–11.) Another of Molina's alleged co-conspirators was arrested with $300,000 on his person; the Government alleges that these were the proceeds from a sale of cocaine and that Molina had directed his co-conspirator to bring these proceeds from New Jersey to Texas. (*Id.* 8:18–9:7.)

In addition to his testimony about cooperating witnesses and Molina's alleged co-conspirators, Special Agent Emrich also addressed evidence obtained through a search of Molina's residence conducted on May 24, 2012, as well as evidence of Molina's criminal history and border crossing habits. Over the course of that search, Special Agent Emrich and other law enforcement officers located a total of nine cell phones (two of which were prepaid cell phones found under Molina's daughter's mattress) in addition to $1500 in cash that Molina had claimed not to know was in his home. (*Id.* 13:21–16:2.) Furthermore, Molina's border crossing history indicates that over a period of eighteen months, Molina made more than three hundred crossings of the border between the United States and Mexico, at times making more than one crossing from Mexico to the United States in the same day. (*Id.* 17:1–12.)

Both at the May 31 hearing before the Western District of Texas and in his memorandum in support of his application for review of the Initial Detention Order, Molina argues that the frequent crossings of the Mexican border must be viewed in

light of the fact that Molina lives with his three children in the United States, while Laura Molina, Molina's wife and the mother of his three children, lives in Juarez, Mexico. (Df.'s Mot. to Revoke 9–10.) The Pretrial Services Report prepared in advance of the May 31 hearing in the Western District of Texas indicates that Molina's three children are United States citizens. According to Molina, frequent travel to Mexico is not unusual in El Paso given the proximity of El Paso to the United States-Mexico border. Molina claims he made his nearly daily border crossings so that his children could visit their mother.

According to both the Western District of Texas Pretrial Services Report and the Addendum prepared by Pretrial Services in the Southern District of New York, Molina has one prior drug-related conviction. On May 25, 1997, Molina pleaded guilty to distribution of a controlled substance in St. Louis, Missouri. He received a five-year suspended sentence and a five-year period of probation, which was completed successfully on June 27, 2002. (Df.'s Mot. to Revoke Order of Detention Ex. H, May 31, 2012, ECF No. 11.)

Molina proposes a bail package consisting of a $260,000.00 property bond, electronic monitoring, third-party custodian supervision, and a corporate surety bond of $100,000.00. The property bond proposed by Molina would consist of his half interest in a business property at 4330 Montana Avenue in El Paso, which has a taxable value of $199,298.00 and is the location for Molina's three businesses, and his interest in the equity of his residence, worth approximately $72,284.92. Members of Molina's family are willing to offer additional property as part of a

possible bail package: Molina's brother offers his own half interest in the business property at 4330 Montana Avenue, and Molina's parents offer the equity in their home in El Paso, valued at $94,605.00. (Df.'s Mot. to Revoke at 8–9.) Molina also notes that the Government has seized his passport. (May 31 Detention Hr'g Tr. 19:18.)

## II. DISCUSSION

A district court having original jurisdiction over a charged offense must review a magistrate judge's detention order *de novo* and do so promptly. 18 U.S.C. § 3145(b); *United States v. Vasconcellos*, 519 F. Supp. 2d 311, 314 (N.D.N.Y. 2007) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)).

In deciding the question of whether pretrial release or detention is appropriate, the Court must determine whether there is a condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(e)(1). In making such a determination, the Court must consider the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the person, the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.* § 3142(g)(1)–(4).

Where the Court finds probable cause to believe that a defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, there exists a rebuttable presumption

that no condition or combination of conditions will reasonably assure the appearance of a defendant and the safety of the community. *Id.* § 3142(e)(3)(A).

On the record before the Court, the Government has established the applicability of the rebuttable presumption contained in 18 U.S.C. § 3142(e)(3) to this case. However, even if the Court were to lay aside this presumption, the Court would be compelled to agree with Magistrate Judge Garney's view that there is no condition or combination of conditions that will reasonably assure the appearance of Defendant. In this case, the nature and circumstances of the offense charged and the evidence against Defendant weigh strongly in favor of detention. The testimony of Special Agent Emrich indicates that Defendant was involved in a conspiracy to distribute large quantities of controlled substances, and the testimony of the cooperating witnesses that Special Agent Emrich referred to was corroborated by recorded phone calls and searches of Defendant's trash and his home. Though Defendant argues that the passage of nearly six years between the recording of these phone calls and the filing of an indictment against him is a substantial weakness in the Government's case, the Government has reasonably countered that Defendant was not identified on these phone calls until much more recently. (*See* May 31 Detention Hr'g Tr. 46:22–47:2.) While under the Constitution and laws of the United States, Defendant is entitled to a presumption of innocence, for purposes of determining whether to grant or deny bail, the Court must agree with Magistrate Judge Garney's assessment that the Government has a "fairly solid case." (*Id.* 48:12–13.)

While Defendant has established that he has long-standing family and business ties to El Paso, these are not the only of Defendant's personal characteristics that a district court must consider in determining whether to grant bail. The Court must consider a defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). While there is no evidence either that Defendant has deliberately failed to appear for court proceedings or that he has been involved in abusing drugs or alcohol, in determining whether bail is appropriate, the Court must consider Defendant's ties to Mexico. These ties are substantial. Defendant's wife currently resides there and, were he to flee to Juarez, Defendant's children (as well as his parents and his siblings) could remain close by in El Paso. Defendant's prior drug-related offense and the near certainty of substantial jail time should Defendant be convicted greatly enhance the risk of flight. On the whole, Defedant's personal characteristics weigh heavily against granting bail.

Finally, though Defendant argues that the Government has failed to show that his release would pose a threat of danger to the community, the lack of specific evidence about an ongoing danger to the community does not mitigate the serious risk that Defendant will fail to appear for trial.

Based on all of the above, neither Defendant's proposed bail package, nor any other combination of conditions, would reasonably assure his appearance. In light

of the presumption of detention for certain violations of the Controlled Substances Act, and all the factors listed in 18 U.S.C. § 3142(g), the Court concludes that Defendant shall be detained.

### III. CONCLUSION

Having reviewed the detention order entered by Magistrate Judge Garney and having considered the parties' arguments and submissions, the Court determines that no condition or combination of conditions will reasonably assure the continued appearance of Defendant. Therefore, this Court orders Defendant detained and directs that:

(1) Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) Defendant be afforded reasonable opportunity for private consultation with counsel; and

(3) on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding.

*See* 18 U.S.C. § 3142(a), (e)(1), (i)(2)–(4).

SO ORDERED.

Dated: New York, New York
August 16, 2012

*John F. Keenan*
John F. Keenan
United States District Judge